## The Elston and Wheeling Gravel Road Company

*v.*

## The People *ex rel.* Francis A. Pierce.

*Filed at Ottawa November 17, 1880.*

1. Instruction—*intimating an opinion on facts as evidence.* In a proceeding by *quo warranto* against a gravel road corporation to deprive it of its franchise for not properly constructing its road, and not keeping the same in repair, the court should not in an instruction say to the jury they might take into consideration the fact of the gates being open, voluntarily on the part of the corporation, to show that such act was an admission by the defendant that the road at such times was not in proper repair, it being wholly a matter for the jury to say what effect, if any, should be given to such fact, without any intimation from the court as to any inferences to be drawn from it.

2. Same—*presenting a false issue.* Where the question in issue was whether the defendant had made a good gravel road, of which fact there was evidence in the case, it was *held,* that an instruction leaving it to the jury to find if the road was constructed of a certain kind of gravel, and if the jury found such gravel was not good material out of which to construct a good gravel road, suitable for travel at all seasons, as a general rule they should find the defendant guilty, was calculated to mislead the jury, calling their attention from the true issue.

3. Same—*misleading and argumentative.* An instruction which fails to present to the jury the real issue of fact, but presenting to their consideration subordinate and minor questions of fact, and which is argumentative and recites the testimony, is erroneous.

4. Evidence—*certified copies of reports of road inspectors.* Under section 17, of "An act to provide for constructing, maintaining and keeping in repair plank, gravel or macadamized roads or pikes by a general law," in force

April 26, 1859, the reports of the road inspectors appointed by the county authorities are admissible as evidence for or against any corporation formed to construct such a road, not only in suits between such corporations and individuals respecting the payment of tolls, but also in a proceeding in the nature of a *quo warranto* to deprive such corporation of its franchise for not keeping its road in proper repair.

5. STATUTE—*repeal, but not for all purposes.* Although the act of 1859 respecting the construction of plank, gravel and macadamized roads was repealed by the general law of 1874 (Rev. Stat. 1874, p. 1026, No. 378) by section 2 of the repealing law, yet such law was continued in force as to all corporations theretofore formed under that act.

APPEAL from the Criminal Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Messrs. STILES & LEWIS, for the appellant:

The court erred in rejecting certified copies of the reports of the toll road inspectors offered in evidence by the respondent.   Public laws 1859, p. 158, sec. 17.

The repeal of this law by the general law of 1874, p. 1026, No. 378, did not take effect as to corporations formed under it prior to the repeal.   Rev. Stat. 1874, p. 1046, sec. 2.

It is not every neglect to keep the road in repair which will subject the corporation to a forfeiture of its franchise, but the neglect must be for a considerable period.   *State* v. *Passumpsie Turnpike Co.* 11 Vt. 431.   See also *The People* v. *Turnpike Company,* 47 N. Y. 586; *Thompson* v. *The People,* 23 Wend. 537.

Mr. CONSIDER H. WILLETT, Mr. JOHN S. MONK, and Mr. WILLIAM H. ROBINSON, for the appellees:

Section 17 of the act of 1859 was no part of the appellant's charter.   It merely affected the remedy—not the right.   It simply prescribed a rule of evidence, which the legislature might alter or abolish at pleasure, and which it did abolish by the act of March 31, 1874.   The section in question was not within the saving clause, for the reason that no suit had been brought, and that it did not affect in any manner any existing right, but related simply and solely to an existing

remedy.   Sedgwick's Stat. and Const. Law (2d ed.) 360.   See *St. Louis* v. *Loughlin,* 49 Mo. 359.

It is well settled that it is a tacit condition of a grant of incorporation that the grantees shall act up to the end or design for which they were incorporated.   Angell & Ames on Corp. sec. 774.   The right to exercise the franchise depends upon the performance of the conditions upon which it was ·granted.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a suit by information in the nature of a *quo warranto,* brought in the Criminal Court of Cook county, at the relation of Francis A. Pierce against The Elston and Wheeling Gravel Road Company.

The company was organized under an act entitled "An act to provide for constructing, maintaining and keeping in repair plank, gravel, or macadamized roads or pikes by a general law," in force April 26, 1859.   Laws of 1859, p. 154.   The organization was effected in 1868 with a capital of $50,000. The company having obtained the consent of the commissioners of highways of the towns of Jefferson and Lake View to occupy the Elston road, proceeded forthwith to construct thereon a gravel pike.   From that time to the present the company has enjoyed the franchise of maintaining and operating the road and collecting toll thereon.   In November, 1878, the present proceedings were commenced to oust the company from its franchise on the ground that the road was not properly constructed and had not been kept in proper repair.   By a stipulation of the parties it was agreed that, waiving all formalities of pleading, the cause should be tried on the issue whether the road had been so constructed and kept in such condition by the defendant as to prevent a forfeiture of its franchise.   The trial resulted in a verdict of guilty.   A motion for a new trial was made and overruled, and judgment of ouster entered against the company, from. which this appeal is prosecuted.

The giving of instructions for the people is complained of as erroneous.

The first branch of the third instruction given for the people was as follows:

" The jury are instructed, as a matter of law, that they may take into account the evidence of the gates being open voluntarily on the part of defendant, to show that such act of opening gates by defendant was an admission by said defendant that said road was not at such times in proper repair."

This was telling the jury that from the fact of the gates being open voluntarily on the part of the defendant, they might infer that the act of opening them was an admission by the defendant that the road was out of repair.   The gates might be voluntarily opened for other reasons, and not because the company thought the road too much out of repair to justify the taking of toll.   It was wholly a matter for the jury to determine what effect, if any, should be given to the fact of the gates being voluntarily opened by the defendant, and we think the court should not have intimated any opinion on the subject, or suggested any inferences which might be drawn from it.

The fourth instruction for the people was as follows:

" If the jury find from the evidence that defendant's road was constructed of Bowmanville gravel, and that such gravel is not a proper material out of which to construct a good gravel road suitable for travel at all seasons, as a general rule, then the jury will find the defendant guilty."

This instruction was calculated to mislead the jury and prejudice the defendant by presenting a false issue.   The question was not whether Bowmanville gravel was proper material out of which to make a good road, but whether defendant had made a good road.   There was evidence in the case that the road which defendant had built was a good gravel

road.   Under the instruction the jury might have been misled to disregard this evidence and find the defendant guilty upon their mere opinion that Bowmanville gravel was unfit for the construction of a road.

The latter part of the fifth instruction for the people was:

"If the jury believe, from the evidence, that the country through which said road passes is low, flat and wet, and the soil of light black earth, supported by clay peculiarly liable to be muddy when wet, and so conditioned that no proper foundation could be made for a road in wet weather, except stone were first used, yet the condition of the country and soil through which said road passes is no reason why stone foundation should not be used, upon which to place the gravel, if such stone foundation was necessary under the circumstances of the country and soil, or some other means used to construct a good, serviceable road."

This instruction is liable to similar objections as the last, and the further objection of being argumentative and reciting testimony, a form of instruction this court has often condemned.

It is further assigned as error that the court below rejected the certified copies of the reports of the toll road inspectors offered in evidence.   Section 15 of the act aforesaid, under which the company was organized, provides for the appointment by the county court or board of supervisors, of three inspectors, freeholders and residents of the county not interested in any such road or pike, whose term of office was to be for two years; who were to take an oath faithfully and impartially to perform the duties of their office, and who were required, when directed by the county authorities, to inspect any such road or pike, having given five day's notice to the company; and if upon such inspection they should determine the road to be out of repair and unfit for use, they should open the toll gates on the road and make a certificate of the

facts and file the same for record in the clerk's office of the county court; and after the toll gates should be thus thrown open, no toll should be collectible until the inspectors, upon the request of the company, should examine the road and make and file for record in the county clerk's office a certificate that the same was in good repair and fit for use; and the company are made subject to a penalty for taking toll when the gates are thrown open as aforesaid. The reports in question were made under this section; they extended over a period of five years, and were made before any suit was commenced.

Section 17 of the act is as follows: "Any company formed under this act shall file a copy of their by-laws signed by the president and secretary of such company, and a list of all the stockholders therein, and the amount of stock signed as aforesaid, in the county clerk's office of the proper county; and all papers filed in such office, relating to any such road or pike, or certified copies thereof, shall be held and considered as sufficient legal evidence of the facts therein stated, for and against such company in all courts of this State."

Although this act was repealed by the general law of 1874 (Rev. Stat. 1874, p. 1026, No. 378),by section two of the repealing law, such act was continued in full force as to all corporations theretofore formed under the act—(Rev. Stat. 1874, p. 1046, § 2;) and this section 17, as well as the rest of the act, we regard as continued in force, although it is contended that it is not.

It is insisted by appellee that these general words "all papers" in the last clause of section 17, should be limited and restrained to the particular papers enumerated in the first clause of the section, to-wit: Copy of by-laws, list of stockholders and amount of stock. Had such been the meaning, the natural expression in the last clause would have been, "and such papers or certified copies thereof shall be held and considered," etc., instead of reading as it does, "and all papers filed in such office relating to any such road or pike, or

certified copies thereof, shall be held and considered," etc. There are various other papers mentioned in the act as to be filed in the county clerk's office, as, in section 1, the certificate of incorporation; in section 2, the agreement in writing for the construction of the road over State and county roads and streets, and in section 15, the oath of office of the inspectors and the reports of the inspectors. And when in section 17 it is said, " and all papers filed in such office relating to any such road or pike, or certified copies thereof, shall be held and considered as sufficient legal evidence of the facts therein stated for and against such company," we think it refers to all the papers which are required by the act to be filed in the county clerk's office.

It is contended further that these inspectors are constituted a special tribunal for a specific purpose,—that of determining the right to take toll as between the company and parties refusing to pay; and that in all contracts between the company and parties refusing the payment of toll, the certificates of the inspectors would be evidence, and that as evidence they are to be restricted to such cases. There are no words of such restriction in the act, and we do not see that in the nature of things any such restriction is required to be made by construction. There is much in these certificates to recommend them to favorable consideration as evidence. They are made by disinterested men, freeholders, public officers appointed by the county authorities holding office for two years, charged with the specific duty of inspecting such roads, who act under the sanction of an official oath, and are required to make a certificate of the facts which they find as to the condition of the road upon inspection, and file the same in the clerk's office. And such import does the law attach to their action, that upon that alone, without more, the gates are opened or closed, and the whole income of the company from the road in the way of tolls is made to cease, or to be restored. The certificates are the acts of public officers appointed by public authority, done in the performance of a public duty, under the respon-

sibility of an official oath, and we see nothing unreasonable
in a law making them evidence against the public when they
come to take away the company's franchise because of failure
in keeping the road in repair or in its proper construction.

. The language of the section is general, " that all papers
filed in the clerk's office relating to the road shall be evi-.
dence for and against the company in all courts of this State,"
without any restriction whatever. We perceive no sufficient
reason requiring the restriction to be made, as contended for,
to suits involving merely the right to take toll.

We think the reports should have been admitted. The
judgment will be reversed and the cause remanded.

*Judgment reversed.*