## Consolidated Coal Company of St. Louis v. Karolina Dombroski.

1. STATUTES—*Chap. 93. Sec. 14. R. S.. Construed.*—Chap. 93, Sec. 14, R. S., providing that a right of action shall accrue to the widow of the person so killed, his lineal heirs or adopted children, or to any other persons or person, etc., authorizes but one action.

2. INSTRUCTIONS—*Laying Down the Law in the Words of the Law is Not Error.*—It is not error to quote the law in the words of the statute when giving an instruction.

Trespass on the Case.—Death by negligent act.    Appeal from the Circuit Court of St. Clair County; the Hon. MARTIN W. SCHAEFER, Judge presiding.    Heard in this court at the August term, 1902.    Affirmed. Opinion filed March 2, 1903.

This suit is by Karolina Dombroski, alleged widow of James Dombroski, deceased, to recover for his death, which occurred July 3, 1901, in the coal mine of appellant, in St. Clair county.

The deceased was employed as a shooter and loader, and while so engaged was killed by the fall of a piece of slate about nine feet long, five feet wide, and from six to eight inches thick.

The suit is brought under the miners act, charging a willful failure and omission to furnish props, etc.

The declaration contains but one count.    It alleges that deceased left surviving him appellee, his widow, and six children.

Appellant pleaded not guilty and also pleaded specially that the appellee was not the wife of said Dombroski at the time of his death.    Also that appellee at the time of the accident was, and is now a resident of the Empire of Russia, and was not and is not now a resident of the State of Illinois, and avers that she was not dependent upon said Dombroski.

To the first plea, appellee replied, traversing its allegations and concluding to the country.    To the second plea, appellee replied admitting its allegations, except that the

replication avers that appellee was dependent upon said Dombroski.

To this replication appellant demurred. The demurrer was overruled and the defendant excepted. Trial was had by jury, resulting in a verdict of $2,000, upon which judgment was rendered and defendant appealed.

WISE & McNULTY, attorneys for appellant.

M. W. BORDERS, attorney for appellee.

MR. JUSTICE WORTHINGTON delivered the opinion of the court.

Appellant urges that the declaration having alleged that the deceased left six children, and the suit being brought in the name of the widow alone, without naming the children, that the suit is improperly brought. There is nothing in this objection. We do not regard this as an open question, considering the statute and the decisions of the courts construing it. In case of death (Chap. 93, Sec. 14, Starr & Curtis) the statute provides that "a right of action shall accrue to the widow of the person so killed, his lineal heirs or adopted children, or to any other persons or person," etc.

The clauses are in the disjunctive. But one action is authorized, and the widow is one of the parties authorized to bring the action. Litchfield Coal Co. v. Taylor, 81 Ill. 590; Beard v. Skeldon, 113 Ill. 584; Consolidated Coal Co. of St. Louis v. Yung, 24 Ill. App. 255; Willis Coal and Mining Co. v. Grizzell, 198 Ill. 313.

At the close of testimony for plaintiff, and again at the close of all the testimony, appellant asked the court to instruct the jury to find for defendant. This the court refused to do. In this there was no error. There is ample testimony, if true, that props had been repeatedly requested for this room. The evidence shows that the custom in the mine was to notify the driver or the pit boss when props were needed, and that both these parties had been repeatedly notified that they were needed in the room where the

deceased was killed. It shows that demand was made two or three days before the accident, and again on the day before the accident, and on the morning of the day of the accident. The evidence also shows that Wm. Blank, who worked with the deceased, had borrowed a prop the day before Dombroski was killed, from a room some 250 feet distant, and had used it in propping slate.

It was objected that evidence was admitted to show that Wm. Blank had called for props for this room. It was not error to admit this evidence. Blank worked in the room with the deceased. The evidence was proper as showing that the condition of the room required props, and also as tending to show willfulness, under the statute, in appellant, for failing to furnish props.

There is evidence tending to show that there were props not far distant from the place where Blank and the deceased were working. There is also evidence tending to show that these props were not suitable in length. If they were suitable, why was a prop obtained on the day before the accident from Swett's room, 250 feet distant, and used by Blank and the deceased? And why were demands made for props if props were already in the room?

This contention of appellant that there were suitable props in the room before the slate fell was an issue of fact for the jury to decide, and the jury has found upon this issue against appellant.

There was the evidence of two witnesses, uncontradicted, that appellee was the wife of the deceased and that he had repeatedly sent her money, amounting in all, as one witness testifies, to seven or eight hundred dollars.

Wm. Blank testified that he knew deceased in Russia, and knew his wife, and that they had nine children, some of whom had died of smallpox.

John Dombroski testified that the deceased was his uncle; that he knew him and his wife in Russia; that they had six children living, whose names he gives.

To this evidence there was no objection.

This was sufficient to warrant the jury in finding for appellee upon the issue of marriage and dependency.

Appellant urges as error, in an instruction given for appellee, that the words occurred, "when demanded, and nearly as possible in suitable lengths and dimensions for the securing of the roof by the miners." Referring to props, caps and timber.

These words are quoted literally from the statute. The claim of appellee was, that props of suitable length were not furnished. At the request of appellant, the court instructed the jury that there was no proof of any demand for cap pieces, or for props of any certain length. We fail to see how the instruction could in any way have prejudiced appellant. With this latter limitation by instruction of the conrt, it could apply only to a demand for props.

It was not error to quote the statute. "Laying down the law, in the words of the law, ought not to be regarded as error." Donk Bros. Coal Co. v. Peton, 192 Ill. 41; Muddy Valley M. M. & M. Co. v. Phillips, 39 Ill. App. 376; Mt. Olive Coal Co. v. Rademacher, 190 Ill. 538.

Sugar Creek Mining Co. v. Peterson, 177 Ill. 329, cited by appellant, is not in point. In that case props were furnished, but it is claimed that they were not of proper length. The court say that "there was no evidence that plaintiff called for props of any particular length." In the case at bar, props were not furnished at all, although repeatedly called for.

The fifth instruction for appellee sums up what was necessary to be proved in order to recover. Appellant alleges that, as given, it is error, because it is argumentative; and also that it fails to note the exception that if props were on hand of sufficient size and number, plaintiff could not recover.

We fail to see the force of the objection that the instruction is argumentative.

As to the second objection, that was an affirmative matter of defense, and plaintiff was not required to negative it in his instruction. Mt. Olive Coal Co. v. Rademacher, *supra*.

There was no error in refusing appellant's first, second and third instructions. The first tells the jury to disregard the evidence that Blank demanded props. We have said, *supra*, that the evidence that he demanded props was properly admitted. If so, it was properly before the jury for consideration.

The second instruction told the jury to disregard the evidence of any demand made upon the driver, Henderson, for props. The evidence shows that it was the custom in the mine to notify the driver when props were needed and that the driver had been notified.

The third instruction was to the effect that Dombroski must have personally demanded props of the mine manager. It was properly refused. The evidence shows that Blank, Dombroski's room-mate, notified the manager, in the presence of Dombroski, that props were needed. It shows that Dombroski personally notified the manager and that the driver had been notified, as was the custom of the mine, before the accident occurred.

For the reason stated, the judgment is affirmed.